# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| DONALD H. MORINSKEY,[1] | ) | 1:08-CV-1661 GSA |
| | ) | |
| | ) | ORDER REGARDING PLAINTIFF'S |
| Plaintiff, | ) | SOCIAL SECURITY COMPLAINT |
| | ) | |
| v. | ) | |
| | ) | |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

## BACKGROUND

Plaintiff Donald H. Morinskey[1] ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for disability insurance benefits pursuant to Title II of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Gary S. Austin, United States Magistrate Judge.[2]

---

[1] Upon a review of the pleadings and medical testimony, it appears that Donald H. Morinskey, rather than Donald H. Marinskey, is the true and correct name of the Plaintiff. Accordingly, the Court has changed the Docket to reflect Plaintiff's true and correct name.

[2] The parties consented to the jurisdiction of the United States Magistrate Judge. On November 19, 2008, the action was reassigned to the Honorable Gary S. Austin for all purposes. (Doc. 13.)

**FACTS AND PRIOR PROCEEDINGS**[3]

Plaintiff filed an application on or about August 14, 2007, alleging disability since October 1, 2002.[4] AR 79-80.  His application was denied initially and on reconsideration.  AR 37-48, 55-61.  Thereafter, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  AR 61.  ALJ Stephen W. Webster held a videoconference hearing on July 1, 2008 and issued an order denying benefits on August 22, 2008.  AR 9-16, 17-36.  On September 25, 2008, the Appeals Council denied review.  AR 1-4.

Hearing Testimony

ALJ Webster held a videoconference hearing on July 1, 2008, in Fresno, California.  AR 17-36.  Plaintiff appeared in Bakersfield and was represented by Diana Wade, a non-attorney representative.  AR 17-36.  Vocational Expert ("VE") Cheryl Chandler also appeared and testified at the hearing.  AR 17-36.

Plaintiff was born on September 9, 1950.  AR 21.  He is not married and has one adult child.  AR 21.  Plaintiff lives in a mobile home with his mother and currently receives food stamps.  AR 21, 25-26.  He holds a valid driver's license and is able to drive.  AR 21.

Plaintiff is able to take care of his personal grooming needs such as showering, shaving, and getting dressed without any assistance.  AR 21-22.  He is also able to do chores around the house such as doing laundry and painting.  AR 22.  Plaintiff performs some work in the yard; he keeps his residence presentable by raking leaves and watering the bushes.  AR 22.

Plaintiff watches television "quite a few" hours a day, but does not read much or spend anytime on a computer.  AR 22.  He also does not go to the movies, visit any friends or family, but he is able to attend church.  AR 23.

Plaintiff attended school for nine years.  AR 23.  The highest grade he completed was either the eighth or ninth grade and he did not obtain a GED.  AR 23.  He was also never in the

---

[3] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

[4] Plaintiff amended his alleged onset of disability date to September 9, 2005 at the hearing held before the ALJ.

2

military. AR 23. Plaintiff completed truck driving school in 1991, but he does not currently hold a "class A" license for driving trucks. AR 24. Plaintiff is eligible to reapply for a license, however, he does not want to because he does not "seem responsible." AR 33. Plaintiff explained that he caused three single vehicle accidents in a one month period of time in 2002 due to his poor judgement and his difficulty staying awake at the wheel. AR 33-34. No drugs or alcohol were involved in these accidents. AR 33.

Plaintiff has not worked for pay since 2002, but he had attempted to return to work until September, 2005. AR 25. Plaintiff was under the belief that his claim for disability started in 2002 when he began treatment for mental health problems at College Community Services. AR 25. However, he amended his date of disability to September 9, 2005 after his representative noted he began treatment at College Community Services on August 11, 2005. AR 25.

Plaintiff has had some trouble with the law. As a juvenile, he had been to jail "on and off." AR 23-24. As an adult, Plaintiff went to prison in 1987 and was released in 1991 for a violent crime. AR 24, 30. He also was charged with driving under the influence a "couple" of times when he was approximately nineteen or twenty years old. AR 24.

Plaintiff suffers from many ailments. He has back pain and problems with his neck, jaw and his left elbow. AR 26. He currently receives treatment for some of these conditions at Kern Medical Center. AR 26. He is also receiving treatment for Hepatitis C. AR 26. Plaintiff testified that he has been to Kern Medical Center a few times over the past couple of years; three times for his elbow and once for his hepatitis. AR 26. He also has received treatment for a hernia and some psychological problems, but he could not remember the year he received treatment. AR 27.

Plaintiff feels pain in his jaw and neck; his jaw is "always clinched real tight" due to his nervousness and anxiety. AR 27. He also feels pain down his leg almost all the time because of his back. AR 27. In addition, his elbow limits his ability to function. AR 27. Plaintiff testified that "anything" he does, such as washing a window, causes his elbow to "swell up" and get infected. AR 27. However, he is more limited by his mental condition than by his physical pain. AR 27.

Plaintiff has bipolar disorder. AR 26. He claims to have racing thoughts and is unable to "deal with the public." AR 26. Plaintiff currently takes Seroquel and Paxil for his condition. AR 31. However, these medications prevent him from being able to concentrate. AR 26. He also has difficulty waking up and falling asleep. AR 26.

Plaintiff currently has a prescription for medical marijuana for managing his pain, mental health problems, and his appetite. AR 31. He has used medical marijuana for over four years, however, he does not use it every day. AR 31. Plaintiff testified that he grows his own marijuana in his yard. AR 31. He claims that it helps him manage his mental health problems by calming him down. AR 31. It also helps him manage the side effects from the Seroquel and Paxil he takes. AR 31. None of Plaintiff's doctors have expressly told him to smoke marijuana. AR 31. His treating physician at College Community Services has noted several times that Plaintiff has a prescription for marijuana, however, has never discussed it with Plaintiff. AR 31-32.

Plaintiff has no problems with sitting, however, he does have some problems with standing. AR 27-28. Plaintiff testified that he would not be able to stand comfortably because his feet are sore and get numb due to the pain in his back that goes down his leg. AR 28. When questioned further, Plaintiff indicated he can stand for a half hour. AR 28. Plaintiff is also able to walk for fifteen minutes if it is not up hill and he can also lift twenty to thirty pounds. AR 28.

Plaintiff has had problems with drugs and alcohol, however, he has never been arrested or convicted of a drug or alcohol related crime except for drunk driving in 1970. AR 29. He also was using methamphetamine when he began treatment at College Community Services for mental health problems in August of 2005. AR 29, 32. He completed two drug programs at College Community Services and also attended two anxiety and depression meetings or "groups." AR 29. Plaintiff felt that these "groups" helped him understand his problems better and that he has not had a drug problem since then. AR 29. However, he still does not like to leave his house, be around others, or go to the store. AR 32.

VE Chandler also testified at the hearing. AR 30. The VE indicated that Plaintiff's past work was medium to heavy and that Plaintiff has no transferable skills. AR 34-35. For the first hypothetical question, the VE was asked to assume a worker of claimant's age, education and work history who could lift fifty pounds on occasion and twenty-five pounds frequently; who could have occasional contact with supervisors, co-workers and the public; and who would be limited to low stress work which would be defined as little change in the work environment. AR 34. The VE advised that such a worker would not be able to perform Plaintiff's past work. AR 35. However, such a worker could perform other jobs in the regional or national economy, such as performing food prep functions, working as a dishwasher, or performing ground maintenance work. AR 35. There are 14,800, 18,000, 27,800 of those jobs, respectfully, in California. AR 35.

For the second hypothetical question, the VE was asked to assume the same factors as in the first hypothetical question, but assume that this worker would be unable to complete a work day or work week without interruption from psychologically based symptoms. AR 35. The VE advised that there would be no jobs in the regional or national economy that such worker could perform. AR 36.

Medical Record

The record is summarized here with particular regard to the report of James McNairn, PsyD because this report relates to the main issue presented in this appeal. Nonetheless, the record as a whole was reviewed and will be specifically referenced where appropriate.

On August 13, 2006, James McNairn, PsyD, a consultive psychiatrist, conducted a comprehensive psychiatric evaluation of Plaintiff. AR 180. The mental status examination showed generally poor hygiene and that Plaintiff appeared older than his stated age. AR 183. His facial expressions were tense, eye contact was fair, his psychomotor activity was slow, but his movements were coordinated. AR 183. During the interview, Plaintiff's attitude was generally cooperative and friendly. AR 183. His quality of speech was somewhat mumbled at times and the rate of speech was rapid and pressured. AR 183. Even though his volume of speech was normal, most of Plaintiff's conversation was punctuated with obscenities. AR 183.

Plaintiff's flow of thought was generally fast and somewhat circumstantial. AR 183. Reality testing was intact and affect was appropriate. AR 183. Intellectual functioning appeared to be within the below average range. AR 183. Remote memory appeared mildly impaired; recent memory appeared intact. AR 183. Plaintiff's calculation ability was good. AR 184. Plaintiff was able to perform a simple, three-step command. AR 184. However, difficulty occurred in answering questions that required concentration and attention. AR 184.

Dr. McNairn diagnosed Plaintiff with Bipolar II disorder, polysubstance dependence in partial remission and antisocial personality disorder. AR 185. He found that Plaintiff had a slight impairment in the ability to remember and understand very short and simple instructions. AR 185. Dr. McNairn reported that Plaintiff had a mild impairment in the ability to remember locations and work-like procedures, as well as in maintaining attention and concentration. AR 185-186. He noted that Plaintiff had a moderate impairment in the ability to: understand and remember detailed instructions; accept instructions from supervisors and respond appropriately; perform activities within a schedule and maintain regular attendance and be punctual within customary tolerances; sustain an ordinary routine without special supervision; complete a normal workday and workweek without interruption from psychologically based symptoms; perform at a consistent pace without unreasonable rest periods; interact appropriately with coworkers and peers without distracting or exhibiting behavioral extremes; and deal with various changes in the work setting. AR 185-186. He indicated that Plaintiff had a moderate to severe impairment in the ability to interact appropriately with the public. AR 186. Dr. McNairn reported that Plaintiff is not capable of managing his own funds based on his substance abuse problems. AR 185. In addition, he found that the likelihood of Plaintiff emotionally deteriorating in a work environment was in the mild to moderate range. AR 186.

ALJ's Findings

The ALJ determined Plaintiff last met the insured status requirements of the Social Security Act on December 31, 2007, but not thereafter. AR 11. He determined that Plaintiff had not engaged in substantial gainful activity during the period from his alleged onset date of September 9, 2005, through his date of last insured of December 31, 2007. AR 11. The ALJ

also determined that Plaintiff had the severe impairments of mechanical low back pain, right elbow bursitis, and bipolar disorder, but that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  AR 11.

Based on his review of the entire record, the ALJ found Plaintiff had the residual functional capacity ("RFC") to perform medium work.  AR 12.  Plaintiff was able to occasionally lift up to fifty pounds; frequently lift and carry up to twenty-five pounds; sit, stand, and/or walk for six hours in an eight-hour day; he was able to handle only occasional contact with his supervisors, coworkers, and the public; and he required a low-stress job.  AR 12.  Given this RFC, the ALJ found that Plaintiff could not return to his past work, however, the ALJ found that Plaintiff could perform jobs that exist in significant numbers in the national economy.  AR 14-15.  Thus, Plaintiff was not disabled as defined in the Social Security Act.  AR 16.

## SCOPE OF REVIEW

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act.  In reviewing findings of fact with respect to such determinations, the Court must determine whether the decision of the Commissioner is supported by substantial evidence.  42 U.S.C. § 405 (g).  Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance.  *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975).  It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson*, 402 U.S. at 401. The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion.  *Jones v. Heckler,* 760 F.2d 993, 995 (9th Cir. 1985).  In weighing the evidence and making findings, the Commissioner must apply the proper legal standards.  *E.g.*, *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988).  This Court must uphold the Commissioner's determination that the claimant is not disabled if the Secretary applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence.  *See Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

## **REVIEW**

In order to qualify for benefits, a claimant must establish that he is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c (a)(3)(A). A claimant must show that he has a physical or mental impairment of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

In an effort to achieve uniformity of decisions, the Commissioner has promulgated regulations which contain, inter alia, a five-step sequential disability evaluation process. 20 C.F.R. §§ 404.1520 (a)-(f), 416.920 (a)-(f). Applying this process in this case, the ALJ found that Plaintiff: (1) had not engaged in substantial gainful activity during the period from his alleged onset date of September 9, 2005, through his date last insured of December 31, 2007; (2) has an impairment or a combination of impairments that is considered "severe" based on the requirements in the Regulations (20 CFR §§ 416.920(b)); (3) does not have an impairment or combination of impairments which meets or equals one of the impairments set forth in Appendix 1, Subpart P, Regulations No. 4; (4) cannot perform his past relevant work as a truck driver; yet (5) retained the RFC to perform jobs that exist in significant numbers in the national economy. AR 9-16.

Here, Plaintiff asserts that the ALJ failed to properly evaluate the opinion of consultative psychiatric examining physician, James McNairn, PsyD. Plaintiff contends that this Court should reverse and remand for the payment of benefits, or in the alternative, reverse and remand this matter for the correction of legal errors.

///
///
///

**DISCUSSION**

*Examining Psychiatrist's Opinion*

Plaintiff asserts the ALJ erred when he determined that Plaintiff has the RFC to perform medium work with only two mental limitations; that he is able to handle only occasional contact with supervisors, co-workers, and the public; and that he requires a low-stress job. (Doc. 17 at 6.) More particularly, Plaintiff argues that although the ALJ generically recites findings of Dr. McNairn's report, his analysis and RFC finding is flawed because he offers no discussion or rationale why he rejects and ignores thirteen significant limitations contained within the report. (Doc. 17 at 6-9.) As noted by the VE testimony, if Dr. McNairn's limitations were accepted, Plaintiff would be disabled because he could not perform work. (Doc. 17 at 9.)

Defendant asserts the ALJ appropriately assessed Plaintiff's RFC based on Dr. McNairn's assessment. (Doc. 21 at 5.) Defendant contends the ALJ did not improperly reject Dr. McNairn's opinion because he gave substantial weight to the serious limitation regarding Plaintiff's ability to deal with the public because it was based not only on Plaintiff's reported symptoms, but on a face to face examination. (Doc. 21 at 5.) Defendant asserts the first hypothetical question posed to the VE fully represented the limitations imposed by Dr. McNairn's recommendation and thus, the ALJ's findings should be upheld. (Doc. 21 at 5-6.)

An ALJ must provide "clear and convincing" reasons for rejecting the uncontroverted opinion of an examining physician. *Lester v. Chater*, 81 F.3d 821, 830-831 (9th Cir. 1995) (citations omitted). The opinion of an examining doctor, even if contradicted by another doctor, can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record. *Id.* (*citing Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995)). Here, Dr. McNairn is an examining physician. AR. 180. Plaintiff has argued that the ALJ ignored the uncontroverted opinions of the doctor. (Doc. 17 at 6-7.) Thus, if the ALJ rejected Dr. McNairn's opinions, he is required to articulate clear and convincing reasons for doing so.

Plaintiff's argument that ALJ Webster erred in his assessment of Plaintiff's RFC because he improperly rejected Dr. McNairn's opinion lacks merit. An RFC is an assessment of an

individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis of eight hours a day, for five days a week, or equivalent work schedule. SSR 96-8p. The RFC assessment considers only functional limitations and restrictions which result from an individual's medically determinable impairment or combination of impairments. SSR 96-8p. "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record including, inter alia, medical records, lay evidence, and 'the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment.'" *Robbins v. Social Security Admin.*, 466 F.3d 880, 883 (9th Cir.2006).

Here, the ALJ considered all relevant evidence in the record in reaching his RFC finding. The ALJ addressed with particularity which medical reports, records and examinations he relied upon for each of Plaintiff's complaints in order to reach his determination. AR 12-14. In making his RFC determination, the ALJ summarized the findings of Dr. McNairn as follows:

> Dr. McNairn concluded that Plaintiff would have serious impairment(s) in his ability to interact appropriately with the general public in work situations, slight limitations in remembering and carrying out simple instructions, mild limitations in maintaining attention and concentration, and moderate limitations in the other mental functions at work. AR 13, AR 185-186.

The ALJ specifically noted that he assigned "substantial weight" to the opinion Dr. McNairn. AR 13. The ALJ stated the following:

> In evaluating the claimant's mental impairment (I've) given substantial weight to the treating records, which show his diagnosis of bipolar disorder and his compliance with medication (Exhibits 10El 9F). *Substantial weight* is also give to the *consultative psychiatrist's conclusion* that the claimant would have serious limitations in dealing with the public, since it is *based not only on the claimant's reported symptoms*, but on a *face to face examination.* AR 13 (emphasis added).

Thus, ALJ Webster noted he gave substantial weight to the treating records which demonstrated Plaintiff's diagnosis of bipolar disorder and his compliance with his medications. AR 13. He also reviewed all of Dr. McNairn's report in the decision, however he only chose to give substantial weight to Dr. McNairn's finding that Plaintiff would have serious limitations in dealing with the public. AR 13. An ALJ need not necessarily agree with everything contained in a medical opinion and can consider some portions less significant than others when evaluated

10

against the other evidence in the record. *Magallanes v. Bowen*, 881 F.2d 747, 753 (9th Cir. 1987). The ALJ need not recite the incantation "I reject the treating physician's opinions because ..." so long as the record reveals specific, legitimate inferences that may be drawn from the ALJ's opinion justifying the decision not to adopt the treating physician's opinion. *Magallanes,* 881 F.2d at 755. Morever, an ALJ is only required to present the VE with those limitations he finds to be credible and supported by the evidence. *Osenbrock v. Apfel*, 240 F.3d 1157, 1165-66 (9th Cir. 2001).

Contrary to Plaintiff's assertion that the ALJ offered no legitimate conclusion or a reason why he did not incorporate all of Dr. McNairn's findings, the ALJ specifically noted that he relied on this limitation because it was based on the doctor's face to face interview rather than on Plaintiff's reported symptoms. AR 13. The ALJ's reluctance to rely on Plaintiff's reported symptoms is supported by his adverse credibility determination which Plaintiff has not challenged. AR 14. Thus, the ALJ's findings are supported by clear and convincing reasons.

Furthermore, although Plaintiff contends that all of Dr. McNairn's limitations are significant, a review of the report indicates that all of the limitations were mild to moderate except for the serious limitation regarding Plaintiff's ability to deal with the public. AR 185-186. The ALJ's RFC limited Plaintiff's work to include a low stress job and occasional contact with his supervisors, coworkers, and the public. Thus, the RFC explicitly addresses the severe limitation by restricting Plaintiff's contact with the public. By addressing the most severe limitation, the ALJ's RFC also encompasses the mild to moderate restrictions. Moreover, the ALJ imposes additional restrictions including limiting Plaintiff to a low stress job and limiting his contact with supervisors and coworkers. Thus, the RFC encompasses all of the limitations outlined in Dr. McNairn's report that the ALJ found to be credible and supported by the evidence. Accordingly, the ALJ's RFC included all of the relevant medical evidence and was supported by substantial evidence.

In addition, the ALJ did not err in his evaluation of the VE's opinion of the Plaintiff's ability to perform work. Hypothetical questions posed to the VE must set out all the limitations and restrictions of the particular claimant . . . ." *Embrey v. Bowen*, 849 F.2d 418, 422 (9th

Cir.1988). The testimony of a VE "is valuable only to the extent that it is supported by medical evidence." *Sample v. Schweiker*, 694 F.2d 639, 644 (9th Cir. 1982). The VE's opinion about a claimant's RFC has no evidentiary value if the assumptions in the hypothetical are not supported by the record. *Embrey*, 849 F.2d at 422. An ALJ is only required to present the VE with those limitations he finds to be credible and supported by the evidence. *Osenbrock v. Apfel*, 240 F.3d 1157, 1165-66 (9th Cir. 2001).

Here, the ALJ posed a hypothetical question to the VE which fully represented the limitations he found to be present. *Osenbrock v. Apfel*, 240 F.3d 1157, 1165-66 (9th Cir. 2001). The ALJ asked the VE if a worker of Plaintiff's age, education and work history, who could lift fifty pounds on occasion and twenty-five pounds frequently, who could have occasional contact with supervisors, co-workers and the public, and would be limited to low stress work, would be able to perform Plaintiff's past relevant work. AR 34-35. The VE responded that such a worker would not be able to perform such work. AR 35. However, the VE advised that such a worker could perform other jobs in the regional or national economy, such as performing food prep functions, working as a dishwasher, or performing ground maintenance work. AR 35. The VE opined that there are 14,800, 18,000, 27,800 of those jobs, respectfully, in California. AR 35. The ALJ correctly posed a hypothetical to the VE which contained all of the limitations he found credible and supported by the evidence. *Osenbrock,* 240 F.3d at 1165-66. Thus, ALJ's reliance on VE Chandler's testimony given in response to the first hypothetical was proper. *Bayliss v. Barnhart,* 427 F.3d 1211, 1217 (9th Cir. 2005).

///
///
///
///
///
///
///
///

**CONCLUSION**

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on the proper legal standards. Accordingly, this Court DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social Security. The Clerk of this Court is DIRECTED to enter judgment in favor Defendant Michael J. Astrue, Commissioner of Social Security.

IT IS SO ORDERED.

Dated:   **March 19, 2010**              /s/ **Gary S. Austin**
                                   UNITED STATES MAGISTRATE JUDGE